Richard CISNEROS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–07–00985–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 28, 2009.

Rehearing En Banc Overruled
Aug. 6, 2009.

Peyton Peebles III, Dan B. Gerson, Houston, for appellant.

Bridget Holloway, Houston, for state.

Panel consists of Chief Justice HEDGES, Justices ANDERSON, and Senior Justice HUDSON.*

## OPINION

ADELE HEDGES, Chief Justice.

Appellant was convicted of possession with the intent to deliver a controlled substance, namely cocaine, weighing between four and 200 grams and sentenced to 28 years in prison. On appeal, appellant raises six issues, challenging (1) the trial court's denial of his motion to suppress evidence seized from his apartment, (2) the factual sufficiency of the evidence, (3) the admission of his prior felony convictions,

---

* Senior Justice J. Harvey Hudson sitting by assignment.

and (4) the trial court's refusal to grant his request for a continuance. We affirm.

## I. BACKGROUND

Appellant lived in an apartment complex in the Heights area in Houston. On February 17, 2006, Officer Chris Massey and Sergeants Larry Bronikowski and Arturo Bazan of the Houston Police Department were conducting surveillance on an unrelated tip near appellant's apartment complex. During their surveillance, Officer Massey observed appellant engaging in suspicious activity. More specifically, around 5:30 p.m., Officer Massey testified that he observed appellant making a "heat run." [1] As appellant was walking to his vehicle to exit the apartment complex a second time, Officer Massey saw a small brown bag partially protruding from appellant's pocket. Officer Massey and Sergeants Bronikowski and Bazan followed appellant as he drove out of the complex, onto a highway, and observed appellant commit three traffic violations: speeding, changing lanes without signaling, and driving a vehicle without a front license plate. Because the three officers were in plain clothes, Officer Massey called in a request for a local patrol unit to stop appellant based on the traffic violations observed by the three officers. Two patrol officers, Charles Corgery and Thurston Johnson, responded to Officer Massey's call and initiated a traffic stop. Officer Massey and Sergeants Bronikowski and Bazan followed the patrol officers and appellant to a nearby gas station where the traffic stop was completed.

Officer Thurston testified that he smelled an odor of marijuana in the vehicle when he approached appellant. The two patrol officers asked appellant for his driver's license and insurance; however, appellant was unable to produce them. Around 7:30 p.m., appellant was arrested and given his *Miranda* warnings. The officers then conducted a vehicle search incident to the arrest and inventoried the vehicle. In appellant's vehicle, the officers discovered a brown bag, similar to the bag previously observed by Officer Massey protruding from appellant's pocket, containing 127.9 grams of cocaine including adulterants and dilutants. The officers then asked appellant where he lived. However, appellant was uncooperative and told the officers that he was homeless. For the next five hours, the officers made investigatory efforts to locate appellant's residence.

First, officers went back to appellant's apartment complex to search apartment 27, the apartment which Officer Massey saw appellant enter and exit earlier in the day. Officer Massey, at the same time, went to the police station to get a search warrant for apartment 27. While drafting the search warrant, Officer Massey learned that a tenant of apartment 27 had given the other officers consent to search the apartment. By this time, six to eight officers were involved in the investigation, and appellant was still in custody, handcuffed in the back of Officer Johnson's patrol unit. When Massey arrived, the officers searched apartment 27 and discovered large amounts of cocaine, methamphetamine, and marijuana. However, it was discovered that appellant did not reside in apartment 27.

Next, the officers and appellant went to the apartment of appellant's sister in

---

1. Officer Massey testified that appellant left the apartment complex in his vehicle, made a few erratic turns while driving on the street, returned to the apartment complex, and then left the complex for a second time. Officer Massey testified that, based on his training, it was his opinion that appellant was performing a "heat run," which is a driver's effort to determine whether or not he is under surveillance.

North Houston. Around 10:30 p.m., officers obtained consent to enter and search the apartment. However, the officers did not discover any incriminating evidence in the North Houston apartment. The officers continued their efforts to locate appellant's residence. They stopped near a bank to discuss their next step and again questioned appellant.[2] The officers then searched appellant's cell phone record of calls and spoke with his girlfriend. With this conversation, the officers were able to identify appellant's apartment. He lived in the same apartment complex in the Heights area where officers previously conducted a search in apartment 27; however, appellant lived in apartment 36. On the way to apartment 36, the officers stopped at a fast food restaurant to eat. Appellant did not ask for and was not offered food, water, or a bathroom break. The officers and appellant arrived at apartment 36 around 12:30 a.m. Shortly after arriving, appellant signed a written consent form authorizing the officers to search apartment 36. Appellant told the officers that there were no drugs in the apartment, only guns. The officers searched apartment 36 and discovered three handguns, one rifle, kilo wrappers, a bullet proof vest, $2,243 in cash, three bongs, and a kilo press.

Subsequently, appellant was charged by felony indictment for the cocaine seized from his vehicle, namely, possession of cocaine weighing between four and 200 grams with the intent to deliver.[3] Prior to trial, appellant filed a motion to suppress the evidence recovered from his apart-

ment. In his motion, appellant alleged that the items found in his apartment were inadmissible because (1) his consent was involuntary and (2) the search of his cell phone leading the officers to his apartment was illegal. Appellant elected to take the motion to suppress to trial, and after a suppression hearing outside the presence of the jury, the trial court denied the motion. Appellant was found guilty by the jury, and the trial court assessed punishment at 28 years in prison.

On appeal, appellant challenges (1) the trial court's denial of his motion to suppress evidence seized from his apartment, (2) the factual sufficiency of the evidence, (3) the admission of his prior felony convictions, and (4) the trial court's refusal to grant his request for a continuance.

## II. MOTION TO SUPPRESS

In his first issue, appellant contends that the trial court erroneously denied his motion to suppress evidence seized from apartment 36. In his motion to suppress, appellant sought to suppress the following evidence found in the apartment: three handguns, one rifle, kilo wrappers, a bullet proof vest, $2,243 in cash, three bongs, and a kilo press. Appellant challenges the trial court's suppression ruling on two bases: (1) appellant's written consent to search his apartment was involuntary and (2) the search of his cell phone leading officers to his apartment was illegal.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifur-

---

**2.** Appellant testified that by this time in the investigation, the officers were increasingly frustrated because they were unsuccessful in locating his apartment. According to appellant, two officers then threatened him: Sergeant Moreira threatened to "knock [his] teeth down [his] throat," and Sergeant Bronikowski asked appellant if he was "ready for a

long ride" and tightened his handcuffs. Sergeant Bronikowski and Officers Massey and Johnson testified that appellant was never threatened by any of the officers during the investigation.

**3.** Appellant was not charged for the contraband found in apartment 27.

cated standard of review: we give almost total deference to the trial court's ruling on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Turner v. State,* 252 S.W.3d 571, 576 (Tex. App.-Houston [14th Dist.] 2008, pet. ref'd). However, when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review *de novo* a trial court's rulings on mixed questions of law and fact. *Johnson,* 68 S.W.3d at 652–53.

At a suppression hearing, the trial court is the sole factfinder and may choose to believe or disbelieve any or all of the witnesses' testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *Weems v. State,* 167 S.W.3d 350, 354–55 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd). When, as here, there are no written findings in the record, we uphold the ruling on any theory of law applicable to the case and assume that the trial court made implicit findings of fact in support of its ruling so long as those findings are supported by the record. *Swain v. State,* 181 S.W.3d 359, 365 (Tex.Crim.App.2005); *Weems,* 167 S.W.3d at 355.

### B. Legality of the Cell Phone Search

Appellant also challenges the legality of the search of his home based upon the alleged illegal search of his cell phone. Appellant contends that the cell phone search was illegal because he had already been arrested and the possession of cocaine offense was completed. Still, the officers searched his cell phone approximately four to five hours after his arrest to locate his residence and determine wheth-

er he had additional drugs in his apartment. Appellant contends that the State offered not exception to the warrant requirement supporting the later search of the cell phone eventually leading officers to his house.

### 1. Waiver

■ In response, the State initially argues that appellant has waived any challenge to the cell phone search because it was not presented to the trial court below. In his written motion to suppress, appellant challenged the search of his apartment on two bases: the cell phone search was illegal and his consent was involuntary. However, appellant did not orally challenge the search of the cell phone at the suppression hearing; he focused exclusively on the voluntariness of his consent. The State asserts that because appellant did not orally argue the legality of the cell phone search at the suppression hearing, he failed to preserve error on this particular basis. We must therefore determine whether appellant's challenge to the search of the cell phone, specifically articulated in his motion to suppress, was waived when not argued orally to the trial court at the suppression hearing.

■ The State relies on a body of well-established caselaw reasoning that a party waives error when (1) a suppression motion makes *global arguments* citing little more than constitutional and statutory provisions and (2) fails to argue any specific grounds for suppressing evidence at the suppression hearing. *See Swain,* 181 S.W.3d at 365. Here, appellant specified two grounds for challenging the search of his apartment in his motion to suppress: the voluntariness of his consent and the legality of the cell phone search. Thus, this case is not controlled by those cases involving an accused merely asserting "global arguments" in the motion to sup-

press. Furthermore, the Court of Criminal Appeals has held that "a motion to suppress will be sufficient to preserve and allege error where the oral argument covers some, but not all, of the grounds raised in the motion." *See Eisenhauer v. State,* 754 S.W.2d 159, 161 (Tex.Crim.App.1988), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App. 1991); *see also Larway v. State,* No. 14–98–00136–CR, 1999 WL 996991, at *2 (Tex. App.-Houston [14th Dist.] Nov. 4, 1999, pet. ref'd) (per curiam) (relying on *Eisenhauer* for the proposition that a motion to suppress will be sufficient to preserve error where the oral argument covers some, and not necessarily all, of the specific grounds raised in the motion).

Additionally, appellant's counsel initiated the suppression hearing by asking the court if he could "please have our hearing on the motion to suppress." After the motion was denied, appellant objected to the evidence thereafter during trial based on "his motion to suppress" previously filed. Because appellant's motion to suppress did not present global arguments, but rather articulated two specific grounds, including the cell phone search, and he objected to the evidence based on his motion to suppress, error has been preserved.

### 2. Search of Appellant's Cell Phone

■ Assuming without deciding whether the admission of the complained-of evidence was error, we find its admission to be harmless. Because the search of the cell phone implicates the right to be free of unreasonable searches and seizures under the United States and Texas constitutions, we conduct a constitutional harm analysis. *See Hernandez v. State,* 60 S.W.3d 106, 108 (Tex.Crim.App.2001). Thus, we must reverse unless we determine beyond a reasonable doubt that the error did not con-

tribute to the conviction. Tex.R.App. P. 44.2(a); *McQuarters v. State,* 58 S.W.3d 250, 258 (Tex.App.-Fort Worth 2001, pet. ref'd).

While the cell phone search ultimately led the officers to find a bullet proof vest, guns, drug paraphernalia, and money in appellant's apartment, the search did not reveal the existence of additional contraband. The record reflects that appellant was not charged with unlawfully possessing the guns or other items found in his apartment. Although not articulated in the State's briefing, the record reflects that the State offered the items found in appellant home as evidence of appellant's intent to deliver the contraband found in his vehicle; however, appellant does not challenge the evidence of his intent to deliver. Furthermore, the testimony of Officer Massey and the chemist wholly incriminated appellant in the instant crime. Both testified that the quantity of the cocaine found in appellant's vehicle was substantial and clearly an amount to distribute. As discussed in the section of this opinion relating to the factual sufficiency of the evidence to support guilt, there was a great deal of direct and circumstantial evidence obtained from sources other than the search in question that linked appellant to the crime, particularly the evidence of appellant making "heat runs" and Officer Massey's observing a brown bag protruding from appellant's pocket similar to the brown bag found in appellant's vehicle containing the cocaine. Accordingly, we find the admission of the complained-of evidence to be harmless. *See* Tex.R.App. P. 44.2(a).

### C. Voluntariness of Appellant's Consent

■ Appellant first contends that the trial court erroneously denied his motion to suppress the evidence found in his

apartment because he did not voluntarily consent to the search. Under both the United States and the Texas constitutions, a warrantless search of a residence is illegal unless the entry falls within one of the specifically-defined and well-established exceptions to the warrant requirement. *Johnson v. State*, 226 S.W.3d 439, 443 (Tex.Crim.App.2007); *Brimage v. State*, 918 S.W.2d 466, 480 (Tex.Crim.App.1994). One well-recognized exception is when a voluntary consent to search has been given. *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex.Crim.App.2007).

■▬▬▬▬ Whether consent was voluntary involves a question of fact that is determined from the totality of the circumstances. *Id.* at 686–87; *Johnson,* 226 S.W.3d at 443. The federal constitution requires the State to prove voluntary consent by a preponderance of the evidence, but the Texas Constitution requires proof by clear and convincing evidence. *Montanez v. State*, 195 S.W.3d 101, 105 (Tex. Crim.App.2006); *Carmouche,* 10 S.W.3d at 331. We consider the following factors in determining voluntariness: the defendant's age, education, and intelligence; the length of detention; any constitutional advice given to the defendant; the repetitiveness of questioning; and the use of physical punishment. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App.2000). We also consider whether (1) appellant was in custody, handcuffed, or had been arrested at gunpoint; *Miranda* warnings were given; and the defendant had the option to refuse to consent. *See Flores v. State*, 172 S.W.3d 742, 749–50 (Tex.App.-Houston [14th Dist.] 2005, no pet.). In examining the totality of the circumstances surrounding a consent to search, the trial court should consider the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor

deemed relevant. *Reasor,* 12 S.W.3d at 818.

Appellant contends that his consent was involuntary because: (1) he was under arrest; (2) multiple officers converged on the scene during his arrest and while he remained in custody thereafter; (3) officers subjected him to repetitive questioning at different locations; (4) he chose to remain silent and was uncooperative throughout the time in which he was in custody; (5) he was in custody for approximately five and a half hours; (6) he was not given food, water, or a bathroom break while in custody; and (7) the officers made physical threats against him. Giving his account, appellant testified that the officers became frustrated with him hours after they were unsuccessful in locating his apartment. According to appellant, Sergeant Moreira threatened to "knock [appellant's] teeth down his throat," and Sergeant Bronikowski asked appellant if he was "ready for a long ride" and tightened appellant's handcuffs, causing his hands to numb. Appellant testified that after riding around in a patrol unit in handcuffs for five and a half hours and being threatened by the officers, he just "wanted to go to jail" and felt that he had no choice but to sign the consent form.

The State strongly disputes appellant's account of the events leading up to the search. At the suppression hearing, the State produced evidence that appellant was lawfully arrested for possession of the contraband found in his vehicle; appellant neither disputes the legality of the traffic stop nor the search of his vehicle. Upon his arrest, appellant was given his *Miranda* warnings. Officer Massey further testified that appellant first gave oral consent to search apartment 36 and then he voluntarily signed the written consent form. Officer Massey testified that appellant read the consent form before he

signed it and appeared to understand that he was giving officers his consent to search the apartment. Although appellant was not given food, water, or a bathroom break while in custody, he undisputedly never asked for either of the three. Officer Massey testified that if appellant had asked for food, water, or a bathroom break, he would have complied with the request. Furthermore, Officers Massey and Johnson and Sergeant Bronikowski testified that appellant was never threatened or coerced in any fashion by the officers.

Although some of the factors we use in determining voluntariness weigh in appellant's favor, the factors, overall, weigh in the State's favor. The fact that appellant was handcuffed and under arrest at the time he gave consent is partially neutralized by giving appellant his *Miranda* warnings. *See Manzi v. State*, 56 S.W.3d 710, 717 (Tex.App.-Houston [14th Dist.] 2001), *aff'd*, 88 S.W.3d 240 (Tex.Crim.App. 2002) ("one affirmative step taken by the police to reduce the effect of [being handcuffed] was to advise him of his legal rights"); *see also Johnson*, 68 S.W.3d at 653 (consent is not rendered involuntary merely because the accused is under arrest); *Williams v. State*, 937 S.W.2d 23, 28–29 (Tex. App.-Houston [1st Dist.] 1996, pet. ref'd) (same). Additionally, nothing in the record shows appellant is of low intelligence or physically disabled. Appellant, 30 years old at the time of his arrest, was able to communicate efficiently with officers, read the consent form before signing it, and appeared to understand that he was giving the officers consent to search the apartment. Appellant even told the officers specifically what items they would find in the apartment when he gave consent. These factors weigh in favor of the State.

Appellant insists that two officers, including Sergeant Bronikowski, threatened him; however, Sergeant Bronikowski denied making any threats towards appellant. Officers Massey and Johnson also testified that appellant was not threatened by any of the officers. At the suppression hearing, the trial court determined the facts and was free to accept or reject any or all of the evidence presented. *Brooks v. State*, 76 S.W.3d 426, 430 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Appellant's testimony clearly conflicts with the testimony of the officers. When viewing the "totality of the circumstances," the trial court was free to believe each officer's testimony and disbelieve appellant's testimony. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex.Crim.App.2000) (although disputed by the defendant, "[t]estimony by law enforcement officers that no coercion was involved in obtaining the consent is also evidence of the consent's voluntary nature").

The record also reflects that appellant was uncooperative; however, one "who refuses to cooperate with the police on the grounds that he is constitutionally permitted to do so, may change his mind at some later time and decide to voluntarily cooperate." *See Manzi*, 56 S.W.3d at 718. Moreover, appellant was advised of his constitutional rights, including his right not to speak with officers. *See Lackey v. State*, 638 S.W.2d 439, 451 (Tex.Crim.App. 1982) (advisement that one has the right to remain silent can be "a very important factor indicating that a subsequent consent to search is voluntary"). The fact that appellant gave written consent weighs in favor of the State as well. *See id.* at 452 (reasoning that written consent "tends to show that [the defendant's] consent was definite and unequivocal").

The testimony of Sergeant Bronikowski and Officers Massey and Johnson, combined with appellant's signature on the consent form and other factors discussed

above, provide clear and convincing evidence that the consent was freely and voluntarily given. Giving deference to the trial court's resolution of factual conflicts, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress on the voluntariness ground. We overrule appellant's first issue.

## III. FACTUAL SUFFICIENCY

■ In appellant's second issue, he contends that the evidence is factually insufficient to show that he knowingly possessed the contraband found in his vehicle.[4] In a factual sufficiency review, we review all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex.Crim.App.2006). We then ask (1) whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the jury's verdict seems clearly wrong and manifestly unjust, or (2) whether, considering the conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence. *Id.* at 414–17; *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App.2006). It is not enough that we declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Watson*, 204 S.W.3d at 417. If an appellate court determines that the evidence is factually insufficient, it must explain in exactly what way it perceives the conflicting evidence greatly to preponderate against conviction. *Id.* at 414–17; *Rivera–Reyes v. State*, 252 S.W.3d 781, 784 (Tex.App.-Houston [14th Dist.] 2008, no pet.). The reviewing court's evaluation

should not intrude upon the factfinder's role as the sole judge of the weight and credibility given to any witness's testimony. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex.Crim.App.2000).

For the offense possession of a controlled substance with intent to deliver, the State must prove that the defendant: (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew the substance in his possession was a controlled substance. *See* Tex. Health & Safety Code §§ 481.002(38), 481.112(a), (f). These elements may be proven by circumstantial evidence. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex.Crim.App.2005); *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.-Houston [14th Dist.] 2006, pet. ref'd).

Appellant argues that the evidence is factually insufficient on the element of possession, i.e., exercising care, custody, control, or management over the contraband, because he was not the exclusive owner of the vehicle in which the contraband was found and the other co-owner had been using the vehicle earlier that day before releasing it to appellant. However, regardless of actual ownership of the vehicle, appellant's right to use it is undisputed. The jury could have disbelieved appellant's testimony that another person co-owned the vehicle and that this co-owner left the contraband in the vehicle proceeding appellant's use of the vehicle. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986); *Cuong Quoc Ly v. State*, 273 S.W.3d 778, 783 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd). Furthermore, even

---

4. Because a factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict is legally sufficient, and because appellant challenges only the factual sufficiency of the evidence, appellant effectively concedes the evidence is legally sufficient to sustain his conviction. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996); *Newby v. State*, 252 S.W.3d 431, 435 n. 1 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd).

if the jury did believe that appellant shared ownership of the vehicle, it did not have to believe appellant's claim that he did not know the contraband was in the vehicle, especially in light of the evidence produced by the State of appellant's previously carrying a brown bag similar to the one in which the contraband was discovered.

Appellant further argues that the verdict is undermined by the absence of additional possible "affirmative links" showing that he knowingly possessed the cocaine. When an accused in not in exclusive possession of a place where the controlled substance is found, the State must affirmatively link the accused to the contraband. *See Evans v. State*, 202 S.W.3d 158, 161–62 (Tex.Crim.App.2006); *Poindexter*, 153 S.W.3d at 406. The following factors are evidence of affirmative links between a defendant and contraband: (1) the defendant's presence when a search in conducted; (2) whether the contraband was in plain view; (3) how close and accessible the drugs were to the defendant; (4) whether the defendant was under the influence of narcotics when arrested; (5) the defendant's possession of other contraband or narcotics when arrested; (6) any incriminating statements the defendant made when arrested; (7) whether the defendant made furtive gestures or attempted to flee; (8) an odor of contraband; (9) the presence of drug paraphernalia; (10) the defendant's ownership or right to possess the place where the drugs were found; (11) whether the place where the drugs were found was enclosed; (12) the defendant's possession of a large amount of cash; (13) the presence of a large quantity of contraband; and (14) any conduct by the defendant indicating a consciousness of guilt. *See Olivarez v. State*, 171 S.W.3d 283, 291 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Notwithstanding the preceding laundry list of possible links, there is no set formula of facts that necessitates a finding of an affirmative link sufficient to support an inference of knowing possession. *Hyett v. State*, 58 S.W.3d 826, 830 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). Affirmative links are established by the totality of the circumstances. *Id.*

Many of the evidentiary factors used to establish affirmative links between an accused and the contraband are present in this case. Appellant owned the vehicle in which the contraband was found. He was driving the vehicle alone and was the only person in possession of the vehicle at the time the contraband was found. Additionally, the contraband was conveniently accessible to appellant and in close proximity to him. An odor of marijuana emanated from the vehicle, and appellant was uncooperative in the subsequent investigation by officers. Moreover, the amount of contraband present was greater than the typical quantity possessed for a user's personal use. Officer Massey also previously observed appellant with a brown bag identical to the brown bag in which the contraband was found. Appellant was observed making "heat runs" in the vehicle prior to his arrest. Additionally, officers found drug paraphernalia and a large amount of cash in appellant's apartment.

Although the State's evidence is disputed by appellant, a decision is not manifestly unjust merely because the trier of fact resolved conflicting views of the evidence in favor of the State. *See Cuong Quoc Ly*, 273 S.W.3d at 783. The jury presumably weighed all the evidence, made credibility assessments, considered alternative explanations, and concluded that appellant knowingly possessed the cocaine with the intent to deliver. After reviewing the evidence impartially, we find the evidence is

factually sufficient to support the jury's verdict.

## IV.  ADMISSION OF PRIOR CONVICTIONS

■ In issues three through five, appellant complains that the trial court erroneously admitted evidence of his: (1) November 16, 1992 conviction for unauthorized use of a motor vehicle; (2) November 16, 1992 conviction for auto theft; and (3) February 3, 1993 conviction for aggravated assault. Citing to *Theus v. State*, appellant contends that his prior convictions were remote and had little probative value. 845 S.W.2d 874 (Tex. Crim.App.1992). In response, the State contends that appellant has failed to preserve error for appellate review. We agree.

The record reflects that, prior to trial, the State gave appellant notice that it intended to use appellant's prior convictions for impeachment purposes. Appellant later filed a *Theus* motion requesting that the trial court allow appellant to testify free of impeachment from the 1992 and 1993 convictions. The trial court conducted a brief hearing on appellant's *Theus* motion and ruled that appellant's convictions were admissible. Thereafter, appellant admitted on direct examination to being previously convicted of unauthorized use of a motor vehicle, auto theft, and aggravated assault and discussed the punishments he had received for those convictions.

■ As a general rule, a complaint regarding improperly-admitted evidence is waived if the same evidence is introduced by the defendant himself. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex.Crim.App. 1993). An exception to this general rule

applies when the accused introduces the evidence in an effort to meet, rebut, destroy, deny, or explain evidence that already has been improperly admitted. *Id.* This exception, however, does not apply if a defendant testifies about his prior convictions on direct examination in an effort to preempt questions anticipated by the State during cross-examination. *Wootton v. State*, 132 S.W.3d 80, 84 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd); *Johnson v. State*, 981 S.W.2d 759, 761 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). Here, the record indicates that appellant testified about his prior convictions on direct examination in an effort to preempt anticipated questions by the State on cross-examination.[5] When appellant testified to the prior convictions, no evidence of his priors had been admitted. By testifying first on direct examination, appellant waived any error on the trial court's ruling regarding admissibility of the convictions. *See Wootton*, 132 S.W.3d at 84. Accordingly, we overrule appellant's third, fourth, and fifth issues.

## V.  REQUEST FOR CONTINUANCE

■ In his sixth issue, appellant complains that the trial court erroneously denied his motion for continuance to secure Amanda Phillips as an expert witness. Appellant unsuccessfully attempted to subpoena Phillips, another HPD chemist who tested the cocaine seized in apartment 27. Appellant anticipated that Phillips would testify that the cocaine found in appellant's vehicle came from a different source than the cocaine found in apartment 27 because they contained different adulterants. Appellant insists that this testimony would

---

**5.** After the trial court ruled that appellant's prior convictions were admissible, defense counsel stated that "in light of the court's

ruling, it's the defense's [sic] plan to have the defendant admit them ... to take the sting out, ... [but do we] not waive error."

have eliminated one of the affirmative-links factors.[6]

 We review a trial court's ruling on a motion for continuance for abuse of discretion. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex.Crim.App.2002). To establish an abuse of discretion, appellant must show that he was actually prejudiced by the denial of his motion. *Id.* Furthermore, when a defendant's motion for continuance is based on an absent witness, it is necessary to show that (1) the defendant has exercised diligence to procure the witness's attendance; (2) the witness is not absent by the procurement or consent of the defense; (3) the motion is not made for delay; and (4) the facts expected to be proved by the witness. Tex.Code Crim. Proc. art. 29.06; *Harrison v. State*, 187 S.W.3d 429, 434 (Tex.Crim.App.2005). A motion for continuance must show on its face the materiality of the absent testimony. *Harrison*, 187 S.W.3d at 434.

Here, appellant has not shown the materiality or relevance of Phillips' testimony. Appellant speculated that Phillips would have testified that the cocaine found in his vehicle came from a different source than the cocaine found in apartment 27. However, appellant was never connected to apartment 27, and in fact, another individual who occupied that apartment was ultimately held responsible for that contraband. Evidence that the cocaine found in appellant's vehicle came from a different source than the cocaine found in apart-ment 27 would have had little, if any, relevance to the instant offense in which appellant was charged and convicted. Accordingly, appellant has failed to show how he was prejudiced without Phillips' testimony. We find that the trial court did not abuse its discretion in denying appellant's motion for continuance. We overrule appellant's sixth issue.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

---

**6.** The State argues that this issue is not preserved for appellate review because appellant failed to raise the issue in a motion for new trial. In *Taylor v. State*, the Court of Criminal appeals held that "[t]he only means of preserving error in the overruling of a motion for continuance due to an absent witness is a motion for new trial." 612 S.W.2d 566, 569 (Tex.Crim.App.1981). However, in *Ho v. State*, this Court found that error was preserved without the filing of a motion for new trial. 171 S.W.3d 295, 300 n. 2 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd). Citing to appellate procedure rule 21.2, the *Ho* court reasoned that "because all facts necessary to address the motion for continuance are in the record, appellant was not required to complain of the denial of the motion for continuance in his motion for new trial in order to preserve the issue for review." *Id.* Similar to *Ho*, the facts necessary in this case to address appellant's motion for continuance complaint are in the record. Accordingly, we address the merits of appellant's complaint.