**Opinion issued March 27, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00167-CR

———————————

**JEREMY SHANE LEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1209651**

---

## MEMORANDUM OPINION

Jeremy Shane Lee was convicted of murder;[1] the jury assessed punishment at life confinement. In two issues, Lee contends that the trial court erred by allowing him to be impeached with a prior conviction for burglary during the guilt

---

[1] TEX. PENAL CODE ANN. § 19.02 (West 2011).

phase of trial and by overruling his objection to jury argument during the punishment phase of trial. We affirm.

## Background

Arlett Bennett died in her Houston apartment after being stabbed 64 times. She had knife wounds to her face and chest and across her neck. The police investigation revealed that she had been dating Lee, who lived in Lufkin. When the police initially questioned Lee about Bennett's death, he denied any involvement, though he did admit to having a relationship with her. In a subsequent interview, after being confronted with phone records showing he had been in Houston at the time of her murder, Lee admitted to stabbing Bennett, but he claimed it was in self-defense.

At trial, Lee testified about his romantic relationship with Bennett. The relationship was characterized as an "affair" because Lee's girlfriend in Lufkin was unaware of his simultaneous involvement with Bennett. Just two days before Bennett's murder, Bennett made a surprise visit to Lufkin, causing Lee to fear that his deception would be uncovered. Lee felt that Bennett "backed me in a corner" and that the relationship "definitely had to come to an end. It ha[d] to come to a head." He asked a friend for a ride to Houston and went to Bennett's apartment two days later.

2

According to Lee, Bennett was "ecstatic" to see him at first but, when he told her he wanted to end the relationship, she became "irate" and said, "I will kill you before I let you leave me." He testified that, when the two were near the door, he turned toward Bennett and saw a knife in her hand. They then wrestled throughout the apartment, each of them taking the knife from the other repeatedly. In the end, Bennett suffered 64 stab wounds, including what the medical examiner testified was a "long, long, long horizontal gaping slash wound . . . just below the chin." Lee testified: "We fell in front of the bed, and I was on top of her. I put the knife in her throat, and I pushed it forcibly and jugged it across her throat, and that time was the time where she actually stopped fighting."

The investigating officers testified about the large amounts of blood in the apartment, including at the front door and in the bathroom. There also was testimony about blood found on a Lysol can. Lee explained that he sprayed Bennett's face with Lysol after stabbing her.

Lee was convicted of murder and sentenced to life confinement.

**Evidence of prior conviction**

In his first issue, Lee argues that the trial court erred by allowing the State to impeach him with evidence of a prior burglary conviction. Lee, though, was the first to offer evidence of the conviction.

As a general rule, a defendant may not argue on appeal that evidence was improperly admitted if the defendant introduced the same evidence at trial. *Wootton v. State*, 132 S.W.3d 80, 84 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). There is an exception to this rule when the defendant introduces the evidence in an effort to "meet, rebut, destroy, deny, or explain evidence that already has been improperly admitted." *Id.* (citing *Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (op. on reh'g)). This exception, however, does not extend to the pre-emptive disclosure of a prior conviction made before the State offers any evidence on the issue. *See Johnson v. State*, 981 S.W.2d 759, 761 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *Wootton*, 132 S.W.3d at 84; *Cisneros v. State*, 290 S.W.3d 457, 468 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd). Furthermore, express statements by defense counsel that prior conviction evidence is being offered "in light of the court's ruling [and only] . . . to take the sting out . . . [but in a manner to] not waive error" do not prevent waiver. *Cisneros*, 290 S.W.3d at 468 n.5; *see Wootton*, 132 S.W.3d at 84 n.8.

The State provided Lee with a copy of his past criminal history, identifying ten criminal acts that resulted in either probation or jail time, and informed Lee of its intent to offer evidence of some of these prior convictions for impeachment purposes, including a burglary conviction. Lee responded by filing a *Theus* motion, which requests a ruling from a trial court that the State cannot impeach a testifying

4

defendant with prior convictions. *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992) (identifying factors for court to consider, including impeachment value of prior crime, temporal proximity, similarity, importance of defendant's testimony, and importance of credibility issue). A hearing was held outside the presence of the jury and before Lee testified. The trial court ruled that the burglary conviction was admissible and denied Lee's motion.[2]

Lee testified about the prior burglary conviction during his direct examination. Lee now argues that he "pre-emptively admitted this prior conviction" because the court already had denied his *Theus* motion and he realized he would be asked about the conviction during cross-examination. The State argues that Lee waived his complaint by preemptively introducing the evidence on direct examination. We agree.

By testifying about the prior conviction before the State offered any evidence on the issue, Lee waived his challenge to the trial court's ruling allowing impeachment by evidence of a prior burglary conviction. *See Johnson*, 981 S.W.2d at 761; *Wootton*, 132 S.W.3d at 84; *Cisneros*, 290 S.W.3d at 468.

Accordingly, we overrule Lee's first issue.

---

[2] Lee does not appeal the trial court's ruling with regard to any of his convictions other than his burglary conviction; therefore, we do not include the others in our analysis. TEX. R. APP. P. 38.1.

**Jury argument**

In his second issue, Lee argues that the trial court erred by overruling his objection to the State's argument during the punishment phase of the trial.

Proper jury argument is generally limited to (1) a summation of the evidence presented at trial, (2) reasonable deductions drawn from that evidence, (3) answers to opposing counsel's argument, and (4) pleas for law enforcement. *Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc); *Swarb v. State,* 125 S.W.3d 672, 685 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). A trial court has broad discretion in controlling the scope of closing argument. *Lemos v. State,* 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.); *see Herring v. New York,* 422 U.S. 853, 862–63, 95 S. Ct. 2550, 2555–56 (1975). The State is afforded wide latitude in its jury argument and may draw all reasonable, fair, and legitimate inferences from the evidence. *Allridge v. State,* 762 S.W.2d 146, 156 (Tex. Crim. App. 1988). Nonetheless, the State may not engage in jury argument that invites the jury to speculate whether the defendant has committed other crimes not in evidence. *See Villarreal v. State*, 576 S.W.2d 51, 64 (Tex. Crim. App. 1978) (en banc).

**A.    The jury argument and objection**

During the punishment phase, the jury heard testimony about Lee's prior conviction for possession of a controlled substance and viewed an admitted

videotape of Lee selling drugs to a confidential informant. The jury also heard from Lieutenant P. Maskunas, who arrested Lee for Bennett's murder. Lieutenant Maskunas testified about the drugs and drug paraphernalia found in Lee's home the day he was arrested. Then, during jury argument, the State suggested to the jury that it could infer from Lee's prior conviction for possession of a controlled substance and from the admitted videotape that there must have been many more instances of illegal narcotics activity. Lee's objection that the attorney's statement "calls for speculation" was denied. The State made a similar comment immediately after Lee's objection; Lee did not make a second objection.

On appeal, Lee challenges the entirety of the State's jury argument on this issue, including the statement made after he objected. But Lee has waived any claim of error as to the statement made after he objected because Lee failed to assert an objection to that comment as well.[3] *See Valencia v. State*, 946 S.W.2d 81, 82–83 (Tex. Crim. App. 1997) (holding that defendant waived jury argument error by failing to object). We hold that the only portion of the jury argument that is before this Court, then, is as follows:

> What do we learn then, that he was convicted of possession of a
> controlled substance; and we have a video of Jeremy Lee selling drugs
> to a confidential informant. Do you know and think to yourself, "How

---

[3] The subsequent remark was as follows: "How many times does someone speed and get a speeding ticket? Just think about that in your own life. So how many times are you doing this before you actually get caught on camera no less . . . ."

many times did he sell drugs to someone that we didn't have it on video?"

Lee's objection was proper. The State invited the jury to speculate whether Lee had committed other crimes that were not in evidence. That is impermissible jury argument. *See Villarreal*, 576 S.W.2d at 64. The trial court erred by overruling Lee's objection. We, therefore, must consider whether the trial court's failure to sustain the objection requires reversal.

## B.     Harmless error analysis

Improper jury argument, such as this, is considered a non-constitutional error and analyzed under rule 44.2(b), which requires that error be disregarded unless it affects an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (en banc) (adopting three-fold test for reviewing whether improper argument substantially affected defendant's rights). A substantial right is affected when an improper jury argument has a "substantial and injurious effect or influence on the jury's verdict." *Orsag v. State*, 312 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is not affected if the reviewing court has a "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). In other words, if there is a "grave doubt" that the result was free from the substantial influence of the evidence, then the defendant's

substantial rights were affected. *See Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002). "Grave doubt" means "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.*

When analyzing the likelihood that the improper jury argument had a substantial influence on the outcome of the case, we consider the argument in light of the record as a whole. *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). We consider (1) the severity of the misconduct or prejudicial effect, (2) any curative measures taken, and (3) the certainty of conviction or punishment assessed absent the misconduct. *Mosley*, 983 S.W.2d at 259–60; *Orsag*, 312 S.W.3d at 120.

### 1.    Severity

In examining the severity of the argument, we review whether it appears that the improper argument was "a willful and calculated effort to deprive [Lee] of a fair and impartial trial." *Brown v. State,* 270 S.W.3d 564, 573 (Tex. Crim. App. 2008).

Viewing the record as a whole, we conclude that the improper argument does not reflect an effort to deprive Lee of a fair trial and that the severity of the misstatement does not weigh in favor of a reversal. The State's comment concerned Lee's prior conviction for possession of a controlled substance and

9

encouraged the jury to infer, from that conviction, that there must have been more times that he did "sell drugs to someone" and was not caught.

The charge for which the jury was determining punishment was not a drug-related crime but, instead, murder. The jury was assessing punishment for a defendant already determined to have brutally stabbed and killed his girlfriend. There was testimony about the extent of her injuries, the large quantities of blood in the apartment, and the fact that he sprayed Lysol in her face as she lay dying on her apartment floor. Whether the jury believed there were other instances in which Lee did "sell drugs to someone" was unlikely to have weighed heavily in their decision of an appropriate punishment, in the prescribed range of 15 years to life, for a murder conviction.

Further, the jury argument implying Lee sold drugs more than once was unlikely to have had a substantial, prejudicial effect given the ample testimony admitted without objection from Lee and others from which the jury could have concluded that Lee had more than an isolated connection to drugs. For example, Lee testified about the explanation he gave his Lufkin girlfriend concerning Bennett's death. Lee testified that he told his girlfriend that Bennett was "setting up a drug deal" for him and that he killed her in self-defense related to that drug deal.

Lieutenant P. Maskunas with the Angelina County Sheriff's Department testified that when he went to Lee's house to arrest him for the murder of Bennett he found marijuana, cocaine, black tar heroin, glass beakers, a digital scale for weighing objects, a large amount of cash, and other evidence indicating narcotics manufacturing and sales. Lieutenant Maskunas informed the jury that Lee was indicted for possession of a controlled substance based on the numerous drug-related materials found in his home that day. Lee did not object to this testimony. The drug possession that led to that indictment occurred two years after the videotaped drug deal shown to the jury.

In the context of the record, as a whole, given (1) the dissimilarity between the crime for which he was being punished (murder) and the other crimes the jury was asked to infer (selling drugs) and (2) the other, unchallenged evidence indicating that Lee had a history with drugs beyond his single conviction, this factor weighs in favor of finding the error harmless.

### 2. Curative measures

No curative measures were taken to minimize the effect of the improper jury argument because the objection was overruled. This factor favors reversal.

### 3. Certainty of punishment assessed

Lee challenges the State's argument implying that he possibly committed more drug offenses. Lee contends the prosecutor's statement caused the jury to

speculate that he committed other felonies and contributed to its decision to impose a life sentence. In reviewing the certainty of the punishment absent the improper argument, we consider the strength of the evidence, looking at all the evidence in the record. *Mosley*, 983 S.W.2d at 259. Here the evidence was strong.

First, although the State improperly invited the jury to speculate that Lee may have committed more drug offenses than what already was in evidence, the State's final argument focused much more on the brutality of the crime for which he was being punished. The jury heard lengthy testimony about Bennett's 64 stab wounds. Lee testified that he covered her mouth to prevent her screams, stabbed her in the face and chest and across her neck, and then sprayed Lysol in her face. The jury found the State's evidence to be credible and rejected Lee's self-defense claim in the guilt phase.

A jury reasonably could conclude, given the type of crime committed, along with the particularly brutal facts of this murder, that Lee was a danger to society with a wanton and callous disregard for human life deserving of punishment at the higher end of the range. *Cf. King*, 953 S.W.2d at 271–72 (dangerousness shown by pattern of disrespect for the law); *Martinez v. State*, 924 S.W.2d 693, 696–97 (Tex. Crim. App. 1996) (en banc) ("[A]ppellant's weapon of choice was a knife—a weapon which, by virtue of its very nature, forces the user to be in such close proximity to his victim that he is often touching him or comes into contact with

12

him on each blow. Furthermore, the character of the weapon is such that several thrusts are often utilized in order to ensure death—each additional thrust potentially indicating to any rational juror that such a personal act requires a wanton and callous disregard for human life"). We cannot conclude that an implication that Lee engaged in additional drug deals—beyond those already in evidence—would have had a significant influence on the jury's consideration, given the other evidence before them directly related to the crime for which he was charged. *See Mosley*, 983 S.W.2d at 260 (finding harmless error when trial court overruled defendant's objection to improper jury argument because certainty-of-outcome factor weighed heavily in favor of State with strong evidence of guilt).

Second, there was ample evidence of other criminal activity. In addition to evidence of illegal narcotics activity at the time of his arrest and in his explanation to his Lufkin girlfriend, Lee admitted to four prior convictions at the beginning of the punishment phase of his trial, including

- Forgery of a commercial instrument (September 11, 2002)
- Felony burglary of a habitation (February 17, 2003)
- Failure to identify (April 17, 2008)
- Possession of a controlled substance with intent to deliver cocaine (October 23, 2009)

These four prior criminal convictions were undisputed. Additionally, the videotape admitted in evidence showed Lee selling drugs to a confidential informant two years before large quantities of drugs and drug paraphernalia were found in his

home. There was evidence of criminal activity and convictions beyond the jury argument inferring additional drug deals.

Accordingly, we do not have a "grave doubt" as to the influence of the improper jury argument on the jury and conclude, instead, that it had but a "slight effect." *See Solomon*, 49 S.W.3d at 365; *Burnett*, 88 S.W.3d at 637–38.

We, therefore, overrule Lee's second issue.

## Conclusion

Having overruled both of Lee's issues, we affirm the trial court's ruling.

Harvey Brown
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).