**Opinion filed December 14, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00125-CR
_____

## CARMEN MEDINA CARMONA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. 25745**

## M E M O R A N D U M   O P I N I O N

A jury found Appellant, Carmen Medina Carmona, guilty of the second-degree felony offense of possession of 2,000 pounds or less but more than 50 pounds of marihuana.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(5) (West Supp. 2023).  The jury assessed Appellant's punishment at eight years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced her accordingly.  In a single issue, Appellant challenges the sufficiency of the evidence to prove that she intentionally or knowingly possessed marihuana.  We affirm.

*Factual and Procedural History*

On February 24, 2020, while traveling from El Paso with her husband, Oscar Soto, Appellant's white 2012 Chrysler Town and Country was stopped by Texas Department of Public Safety (DPS) Trooper Jose Astello for speeding. Prior to the stop, Trooper Astello had received a tip to be on the lookout for a white Chevrolet van.

The Chrysler van belonged to Appellant.[1] Soto, the driver, was asked to step out of the vehicle so Trooper Astello could check his driver's license and "engage in some conversation with him." According to Trooper Astello, Soto appeared "beyond nervous." Trooper Astello testified that he could see Soto's chest rising through his shirt and stated that Soto had sweat on his upper lip and forehead, and had started to develop "cotton mouth." Trooper Astello asked Soto if there was anything illegal in the vehicle, which Soto denied. Trooper Astello then requested Soto's consent to search the vehicle and his consent was given. Trooper Astello then asked Appellant if there was anything illegal in the vehicle, which she also denied. Appellant testified that she gave him permission to search the vehicle. During the search, Trooper Astello discovered three large, heavy duffel bags, each containing numerous one-pound bundles of marihuana, which totaled 160 pounds. One duffel bag was located behind the second-row passenger seat, and the other two duffel bags were located "in the trunk" underneath Soto and Appellant's personal luggage.

Soto and Appellant were arrested and taken to the DPS office in Eastland. Billy Alexander, a Special Agent with the DPS Criminal Investigations Division, interviewed Appellant and Soto separately. Soto told Special Agent Alexander that

[1]During the traffic stop, Trooper Astello learned that the van had belonged to Sylvia Medina, Appellant's late mother. Appellant concedes that the van belonged to her and that she was present in the van with the marihuana.

2

he was transporting the "reggie," a "lower grade" of marihuana, to Dallas and "was just going to see what [he] could do." Soto stated that they left El Paso the day before and was inconsistent regarding which day he purchased the marihuana. Soto denied that Appellant had any knowledge of the marihuana, denied having a specific buyer, denied supporting any specific motorcycle gang, and refused to tell Special Agent Alexander who supplied the marihuana. During her interview, Appellant confirmed that they had left El Paso the previous day but stated that they had stopped in Abilene—not Big Spring as Soto had said to Trooper Astello. Appellant had trouble remembering the name of the hotel. When Special Agent Alexander asked Appellant whether she was with Soto when he "picked this up," she said "no" and that she "didn't even know he had bad things with [them]."

At trial, Soto testified that he was given an opportunity by a friend to make some money by taking the marihuana to Dallas, selling it, and splitting the profits. Soto testified that he sold his motorcycle for $5,500 to purchase the drugs and was supposed to pay $120 per pound. He testified that he could get $400 per pound, which would make him about $62,000. Soto testified that they go to Dallas once or twice a month but stated that this is the first time that he tried to transport marihuana. Soto denied that Appellant knew anything about or had anything to do with the marihuana. Appellant also testified and continued to deny that she knew about the marihuana and made statements that were inconsistent with the body camera evidence admitted at trial. In regard to Soto, Appellant testified that she is "not a naive person. Like I said, I was raised in the hood, so several times I knew [Soto] was doing something." Appellant also testified that she sold her vehicle for $12,000 and, shortly before their trip to Dallas, sold her jewelry for $1,600. Furthermore, Appellant testified regarding her prior federal conviction for conspiracy to import marihuana, stating that she committed that crime "because of her first baby daddy."

3

Following a jury trial, the jury found Appellant guilty of possession of marihuana. Appellant argues on appeal that the evidence was insufficient to prove beyond a reasonable doubt that she intentionally or knowingly possessed marihuana.

*Analysis*

In her sole issue, Appellant contends that the evidence is legally insufficient to support her conviction. Specifically, Appellant contends that the evidence cannot support her conviction for possession of marihuana because Appellant did not have the requisite mens rea, in that, she did not have any knowledge that Soto had placed the duffel bags full of marihuana in the vehicle prior to leaving for their trip to Dallas.

A. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at

4

778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson,* 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish her guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

B. *Applicable Law: Affirmative Links*

A person commits the felony offense of possession of marihuana if that person knowingly or intentionally possesses a useable quantity of the drug. HEALTH & SAFETY § 481.121(a). "Possession" is defined as "actual care, custody, control, or

management." *Id.* § 481.002(38); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2021). In this regard, to prove unlawful possession of a controlled substance, the State must establish that the accused exercised care, control, or management over the contraband and knew that the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The elements of possession may be proven through direct or circumstantial evidence, but "[r]egardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

Appellant's mere presence in the same place as the controlled substance is insufficient to support a possession finding. *Evans*, 202 S.W.3d at 162. But presence or proximity, *when combined with other evidence*, either direct or circumstantial, may establish possession. *Id.*

Texas courts have formulated the "affirmative links rule," which provides that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans*, 202 S.W.3d at 162 n.12 (listing affirmative links recognized by courts); *see also Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 n.12). The affirmative links rule is routinely employed to establish possession when the accused is not in exclusive possession of the place where the drugs are found; it is designed "to protect the innocent bystander from conviction based solely upon [her] fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406. "This rule simply restates

the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.*

The following links have been applied to infer knowledge that relate to the possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12). It is not the number of identified links that is dispositive; rather, it is the logical force of all of the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162.

C. *Sufficiency of the Evidence*

Here, Appellant argues that she does not meet some of the affirmative links identified above. Specifically, Appellant contends that there is no evidence of the marihuana being in plain view, that neither she nor Soto were under the influence or that there was an odor of marihuana, that she made any incriminating statements, any attempts to flee, or furtive gestures, that she possessed large amounts of cash or that her conduct indicated a consciousness of guilt. But many of the links are present

7

and weigh in favor of an inference that Appellant had actual care, custody, control, or management of the marihuana and knew the substance was marihuana. For example, Appellant admits that "the van belonged to Appellant and [that she] was present in the van with the marihuana, [though] Appellant was not driving." Appellant was present at the time the marihuana was discovered and was in close proximity to the marihuana, one seat away from the closest duffel bag. Thus, she had access to the location where it was found. *See, e.g.*, *Black v. State*, 411 S.W.3d 25, 29 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (sufficient affirmative links where defendant was owner and driver of vehicle at the time marihuana was discovered in the trunk); *Cisneros v. State*, 290 S.W.3d 457, 467 (Tex. App.— Houston [14th Dist.] 2009, pet. dism'd) (evidence was sufficient to affirmatively link defendant to marihuana where, among other things, defendant owned and was driving the vehicle at the time the marihuana was discovered). Moreover, the duffel bags were not secured by a lock and Appellant had access to all compartments in the vehicle during the drive and during any stops, including their overnight stop. The jury was allowed to view the marihuana itself during the trial. And while Appellant was not found with a large amount of cash, Appellant testified that she sold her vehicle for $12,000 and, less than a week before the trip, sold $1,600 worth of jewelry. Those amounts, in combination with the $5,500 Soto received for the sale of his motorcycle for the marihuana purchase, are more consistent with the value the pair could receive for that large quantity of marihuana—a quantity that Special Agent Alexander testified was worth anywhere between $75,000 and $750,000. Finally, when Trooper Astello located the marihuana, Appellant did not seem surprised by the discovery or by her arrest.

Appellant also testified regarding her experience with importing and transporting marihuana, stating that she was "caught in the bridge bringing dope

8

from Juarez to El Paso." Her prior federal drug conviction was a similar offense to the one with which she was convicted and is relevant to her knowledge and intent; it further reduces the possibility that possession and/or transport of marihuana in this instance was done unknowingly with innocent intent. *See Hung Phuoc Le v. State*, 479 S.W.3d 462, 470–71 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Plante v. State*, 692 S.W.2d 487, 491–92 (Tex. Crim. App. 1985)).

The jury was the sole judge of the witnesses' credibility—including Appellant's—and the weight their testimony was to be afforded. *See Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Therefore, we defer to the jury's credibility and evidentiary weight determinations and give due deference to their resolution of conflicts in the testimony, the weight they gave the evidence, and the reasonable inferences they drew from such testimony and evidence. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. In this regard, although Appellant claims she did not know about the three large, heavy duffel bags containing 160 pounds of marihuana, she was present in the vehicle for a long time during the drive from El Paso to Eastland County and the bulky duffel bags containing the marihuana were in plain view. The volume and weight of marihuana in three large and heavy duffel bags in the interior of the vehicle is not something that was hidden, nor was their presence easily ignored, particularly when Appellant stated it was only a two-day trip; the couple rode together from El Paso; spent the night elsewhere before driving to Eastland County; and the couple's personal luggage was on top of two of the duffel bags. In light of the evidence presented, we cannot say that it would be unreasonable for the jury to have disbelieved Appellant's testimony when she testified that she "didn't see no other bags." As we have said, Appellant herself testified that "I'm not a naive person. I -- like I said, I was raised in the hood. So several times [in the past] I knew [Soto] was doing something, but

9

he wouldn't admit it."  It is not unreasonable for a jury to have deduced that Appellant would have noticed and known of the presence of three duffel bags in her vehicle and for the jury to conclude that the contents of the proverbial "elephants in the room"—three large, bulky, heavy duffel bags close in appearance that contained marihuana—would have been known to, controlled, and possessed by Appellant.

Based on our review of all of the evidence in the light most favorable to the verdict, we conclude, in view of that testimony and evidence presented at trial, that the jury could have found the essential elements of the charged offense beyond a reasonable doubt, and we cannot conclude that their decision was based solely on Appellant's mere presence in the same place as the marihuana.  The logical force of all the evidence shows that Appellant had care, custody, control, and unfettered access to the vehicle and the duffel bags containing the marihuana and that she knew the duffel bags contained contraband.  The cumulative force of all the incriminating circumstances is sufficient to support the conviction.  We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


December 14, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.